UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUEBEN OLIVARES,

     Plaintiff,

v.                           Case No.:  8:23-cv-1027-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Rueben Olivares seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the Commissioner's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the administrative law judge, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are

reviewed under a de novo standard. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The Commissioner must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the Commissioner must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the Commissioner must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the Commissioner finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the Commissioner must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the Commissioner must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.   Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on February 2, 2021, alleging disability beginning January 18, 2021. (Tr. 71, 180-90). The application was denied initially and on reconsideration. (Tr. 71, 72). Plaintiff

requested a hearing and on October 17, 2022, a hearing was held before Administrative Law Judge Glen H. Watkins ("ALJ"). (Tr. 34-54). On December 23, 2022, the ALJ entered a decision finding Plaintiff had not been disabled from January 18, 2021, through the date of the decision. (Tr. 17-28). On April 4, 2023, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5).

Plaintiff began this action by Complaint (Doc. 1) filed on May 9, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 13).

**D.    Summary of ALJ's Decision**

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025. (Tr. 19). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 18, 2021, the alleged onset date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: "anxiety disorder; major depressive disorder; post-traumatic stress disorder (PTSD); lumbar disc disease; left foot calcaneal spur; osteoarthritis of the ankles, feet, knees, and hands; and left thumb trigger finger." (Tr. 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to 20 pounds occasionally and lift and carry up to 10 pounds frequently and light work as defined in 20 [C.F.R. §] 404.1567(b). The claimant can stand and/or walk for approximately 6 hours per 8-hour workday and sit for approximately 6 hours per 8-hour workday. All postural positions are limited to occasional including climbing ladders, ropes, or scaffolds, climbing ramps or stairs, balancing, stooping, crouching, kneeling and crawling. Gross manipulation bilaterally is limited to frequent. The claimant can understand, remember, carry out and perform simple routine tasks and instructions and with reasoning level 1 or 2.

(Tr. 22).

At step four, the ALJ determined that Plaintiff was not capable of performing his past relevant work as a bus driver, tractor trailer truck driver, and HVAC installer. (Tr. 27). At step five, the ALJ found that considering Plaintiff's age (51 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 27). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1)   Small products assembler, DOT[1]  706.684-022, light, SVP 2

(2)   Scale operator, DOT 555.687-010, light, SVP 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

    (3)   Collator operator, DOT 208.685-010, light, SVP 2

(Tr. 28). The ALJ concluded that Plaintiff had not been under a disability from

January 18, 2021, through the date of the decision. (Tr. 28).

## II.   Analysis

On appeal, Plaintiff raises four issues:

(1)    Whether the ALJ failed to develop the record;

(2)    Whether the ALJ's RFC assessment for light work is supported by substantial evidence;

(3)    Whether the ALJ failed to properly consider Plaintiff's credibility and subjective complaints; and

(4)    Whether the ALJ failed to consider a combination of impairments.

(Doc. 26, p. 3).

### A.   Duty to Develop the Record

Plaintiff contends that even though the SSA sent Plaintiff to a physical

consultative examination and a mental consultative examination, neither provider

supplied a function-by-function assessment. (Doc. 26, p. 3-7). Plaintiff argues that

the ALJ failed to develop the record by not recontacting these providers to obtain

function-by-function assessments and argues the record does not contain the

necessary information for the ALJ to assess an RFC. (Doc. 26, p. 3-7). Without this

type of analysis, Plaintiff argues that the ALJ had no basis to find Plaintiff able to

perform light work with additional limitations. (Doc. 26, p. 3). The Court finds no basis for remand on this issue.

A plaintiff bears the burden of proving he is disabled and is responsible "for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Even so, "[i]t is well-established that the ALJ has a basic duty to develop a full and fair record." *Id. See* 20 C.F.R. § 416.945(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.").[2]

Even though an ALJ has this duty, he "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Further, the ordering of a consultative examination or recontacting a consultative examiner is a discretionary matter for the ALJ and should be sought "'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision'

---

[2] When a claimant is not represented at a hearing and has not waived her right to representation, then the ALJ has a "special duty" to develop the record. *See Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). In this case, Plaintiff was represented at the hearing and thus the ALJ only had a basic duty to develop the record. (Tr. 34-54).

on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) (quoting 20 C.F.R. § 416.919a(b)).

On August 21, 2021, Ladapo Shyngle, M.D. from Newsome Medical conducted a consultative examination of Plaintiff. (Tr. 473-80). On examination, he found Plaintiff had a generally normal exam with "no pain discomfort," except: mild to moderate tenderness in the lift hip, right knee, right ankle; moderate cervical tenderness; moderate difficulty with tandem walk, heel walk, toe walk, squatting; and was unsteady to hop. (Tr. 475-76). His impression was, "[c]laimant has moderate restriction for strenuous physical activities because of his musculoskeletal pains." (Tr. 477).

In the decision, the ALJ thoroughly summarized Dr. Shyngle's report. (Tr. 25). The ALJ found his opinion, "that the claimant has moderate restrictions for strenuous physical activities due to musculoskeletal pains is not persuasive. The moderate restrictions and strenuous activities were not defined by Dr. Shyngle. Therefore, supportability and consistency cannot be determined (6F)." (Tr. 26).

While Dr. Shyngle did not supply a function-by-function analysis, the State agency medical consultant, Gordon Couch, M.D. did. (Tr. 59-61). Dr. Couch found Plaintiff able to stand or walk about 6 hours in an 8 -hour workday, sit for 6 hours in an 8-hour workday, was limited to frequently climbing ramps or stairs, occasionally climbing ladders/ropes/scaffolds, and limited right handling. (Tr. 59-

60). To reach these limitations, Dr. Couch considered the medical evidence of record, which included a detailed summary of Dr. Shyngle's consultative examination. (Tr. 61).

In the decision, the ALJ considered Dr. Couch's findings and found them partially persuasive. (Tr. 26). The ALJ noted that Dr. Couch assessed light exertion with postural and manipulative limitations, but found Plaintiff more limited:

> The prior administrative findings are supportable and inconsistent [sic] in terms of the light exertion. However, the undersigned finds that the evidence supports slightly more restrictive postural limitations and also bilateral limitations for gross manipulation rather than just the right upper extremity. The prior administrative findings were made in September 2021, and there are a number of subsequent records including from Gessler Clinic in 2021 and 2022, as well as a lumbar spine MRI from December 2021 which support the more restrictive limitations herein.

(Tr. 26). Thus, the ALJ considered Dr. Couch's findings – which included a review of Dr. Shyngle's examination findings – and incorporated some of these findings, but also considered more recent medical evidence to add additional limitations in the RFC. Plaintiff failed to show that the evidence as a whole was insufficient to support the ALJ's RFC assessment for physical limitations.

Likewise, Plaintiff argues that the ALJ should have obtained a function-by-function report on Plaintiff's mental limitations because the consultative psychological evaluator did not provide this analysis. (Doc. 26, p. 4-7). On August 23, 2021, Maria R. Otero-Suria, Psy.D. conducted a psychological evaluation. The

evaluation showed a generally normal mental evaluation, with some recent memory and slow speech issues. (Tr. 506-509). Dr. Otero-Suria found that Plaintiff's "mental health symptoms based on report and clinical observations appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions. Current prognosis for Mr. Olivares is fair." (Tr. 509).

In the decision, the ALJ summarized in detail Dr. Otero-Suria's psychological evaluation. (Tr. 25, 26-27). The ALJ determined that "the opinion of Dr. Otero-Suria who opined that mental health symptoms appeared to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions, is not persuasive. The term moderate was not defined, and no specifics were provided in regard to how they impact activities of daily living, vocational performance or interpersonal interactions." (Tr. 26-27).

In the decision, the ALJ noted that Dr. Otero-Suria found Plaintiff had impaired recent memory and slow speech, as well as findings of anxious mood and restless behavior/motor reported in other medical records from 2022. (Tr 26). As a result, the ALJ decided that these medical records support limitations to simple routine tasks and instructions and with reasoning level 1or 2. (Tr. 26). Thus, even though the ALJ did not find all of Dr. Otero-Suria's opinion persuasive, the ALJ still adopted some of the evaluation findings, which lead to including additional limitations in the RFC based on Dr. Otero-Suria's evaluation and other medical

evidence of record. Plaintiff failed to show that the evidence as a whole was insufficient to support the ALJ's RFC assessment as to mental limitations.

## B.    Light Work

Plaintiff argues that substantial evidence does not support the ALJ's RFC assessment that Plaintiff could perform the standing and walking requirements of light work, based on his complaints of low back pain radiating down his right leg, bilateral knee pain, and bilateral hand pain. (Doc. 26, p. 8). Plaintiff also contends that he cannot meet the light level work requirements of lifting or carrying 20 pounds occasionally, and 10 pounds frequently, and standing or walking for 6 hours in an 8-hour day. (Doc. 26, p.8). The Court finds the ALJ properly considered the RFC assessment.

An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). In other words, ALJs "are by law investigators of the facts

and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id*.

In support of his argument, Plaintiff cites treatment records and the physical consultative examination which showed that he complained of low back pain, bilateral leg pain, knee pain, and hand pain. (Doc. 26, p. 8-11). Plaintiff also cites an abnormal February 2022 MRI that showed, among other things, mild or moderate disk bulging, a radial tear, bilateral facet hypotrophy with severe impingement, disk desiccation, a herniated portion of a disk, and severe impingement on the bilateral lateral recesses. (Doc. 26, p. 10 (citing 541-42)). After the MRI, Plaintiff was referred to a neurosurgeon, Jonathan S. Hall, M.D. (Doc. 26, p. 11). At this visit, Dr. Hall found tenderness to palpation over the cervical and lumbar spine, with some limited range of motion. (Doc. 26, p. 11; Tr. 640).

At the same time – as the ALJ noted and Plaintiff concedes – Dr. Hall found Plaintiff could ambulate in and out of the office without difficulty and without an assistive device. (Tr. 640; Doc. 26, p. 11). Dr. Hall also found focal motor testing, including an assessment of hand, wrist, biceps, triceps, and deltoids, as well as dorsiflexion, plantar flexion, knee flexion, knee extension, and iliopsoas were all 5/5. (Tr. 640). Dr. Hall recommended limited lumbar epidural injections to provide relief, but noted Plaintiff may eventually need surgery for definitive care. (Tr. 641).

The ALJ considered all the relevant evidence of record, both the evidence in support of Plaintiff's complaints as well as other evidence in reaching an RFC assessment. And as discussed above, the ALJ relied in part on the State agency medical consultant's opinion on Plaintiff's physical functional limitations. (Tr. 26). In essence, Plaintiff invites the Court to reweigh the evidence, which it cannot do. A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Even if the evidence preponderates against the Commissioner's decision, the Court must affirm if substantial evidence supports the Commissioner's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). Substantial evidence supports the ALJ's RFC assessment for light work.

### C.    Subjective Complaints

Plaintiff argues that the ALJ inaccurately considered Plaintiff's subjective complaints. (Doc. 26, p. 17). Plaintiff complained of pain in his hands, low back, knees, hips, and feet at almost every office visit, which he argues conflicts with the ALJ's finding that treatment records did not show consistent complaints of the symptoms Plaintiff alleged were disabling. (Doc. 26, p. 17). Plaintiff further argues that the ALJ cited treatment records that showed the absence of abnormal findings for imbalance, moving about the exam rooms, difficulty getting up from chairs, or

up and down from exam tables, but no record supports a finding that he could stand or walk for 6 hours in an 8-hour workday. (Doc. 26, p. 17). Plaintiff also argues that the ALJ failed to properly consider the severity of the objective medical evidence, including the results of a February 2022 MRI. (Doc. 26, p. 18). Finally, Plaintiff contends that the ALJ failed to properly consider Plaintiff's subjective complaints of his mental health conditions, such as anxiety, depression, post-traumatic stress syndrome, and sleep disorders. (Doc. 26, p. 20-21).

Generally, a claimant may establish that he is disabled through his own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other

symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors along with all the evidence of record. *Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

In the decision, the ALJ summarized Plaintiff's allegations of pain and his limitations. (Tr. 23). The ALJ recounted that Plaintiff alleged disability largely based on pain, such as pain in his back, knees, feet, and hands, which limited him in sitting, standing, walking, lifting, carrying, fine and gross manipulations, reaching, postural activities, and most activities of daily living. (Tr. 23). The ALJ summarized

Plaintiff's hearing testimony when he described radicular back pain down the lower extremities, loss of feeling in his toes, tingling and burning of the feet, the use of a cane, difficulty holding and grasping objects, and difficulty with self-care and simple daily activities. (Tr. 23). The ALJ also summarized Plaintiff's mental complaints, such as difficulty concentrating and focusing, getting along with others, and difficulty sleeping, causing sleeping during the day. (Tr. 23). Finally, the ALJ discussed side effects of Plaintiff's medications, but found Plaintiff no longer took the medication causing side effects. (Tr. 23).

The ALJ then determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence of record for the reasons explained in the decision. (Tr. 23). The ALJ then explained his subjective complaint findings in more detail:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because treatment records do not show that the claimant has consistently complained of the symptoms he alleges are disabling. The records do not show that a cane is prescribed or regularly used, and do not report findings of obvious discomfort on office visits. The undersigned further notes the absence of numerous abnormal findings such as imbalance, difficulty moving about the examination rooms, and difficulty getting up from chairs or up and down from examination tables, among others. Additionally, a number of objective examination findings are largely normal and in marked contrast to the very severe limitations alleged.

> Specifically, the records discussed below repeatedly report findings of no acute distress, normal gait and station, normal range of motion, normal sensory, and normal mental findings which are inconsistent with the physical and mental limitations alleged. With regard to alleged difficulty sleeping and sleeping during the day the treatment records are generally devoid of abnormal findings such as the appearance of sleepiness or drowsiness, impaired focus or otherwise.

(Tr. 23).

Following the subjective complaint findings, the ALJ discussed the objective medical evidence from Plaintiff's various office visits as well as the objective testing, such as MRI results. (Tr. 24-26). He considered in detail the consultative exam conducted by Dr. Shyngle as well as the mental health records from Peace River Center and Dr. Otero-Suria's consultative evaluation. (Tr. 25). The ALJ also considered Plaintiff's alleged sleep issues from PTSD caused by Plaintiff witnessing traumatic events while a tow-truck driver. (Tr. 23). The ALJ found that the treatment records generally lack abnormal findings, including any appearance of sleepiness, drowsiness, or impaired focus. (Tr. 23). The ALJ considered Plaintiff's daily activities, the location and intensity of his pain, the side effects of any medication, the treatment he received, as well as the objective medical and other evidence of record. In short, the ALJ considered all the relevant evidence of record, clearly articulated explicit and adequate reasons for finding Plaintiff's subjective statements not entirely consistent with the medical and other evidence of record, and considered Plaintiff's medical condition as a whole. As stated above, the Court cannot reweigh

the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). Substantial evidence supports the ALJ's subjective complaint analysis.

### D.   Mental Limitations in RFC

Plaintiff claims that even though the ALJ found Plaintiff's anxiety disorder, major depressive disorder, and PTSD severe impairments, the ALJ did not account for these impairments in the RFC. (Doc. 26, p. 22). Plaintiff claims that the ALJ barely mentioned Plaintiff's mental impairments in his RFC assessment. (Doc. 26, p. 22).

In the decision at step two, the ALJ found Plaintiff had severe impairments, including anxiety disorder, major depressive disorder, and PTSD. (Tr. 19). By definition and as the ALJ noted, severe impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28." (Tr. 16); *see* 20 C.F.R. § 404.1520(c). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal citations omitted). As explained above, an RFC assessment reflects an individual's ability to do physical and mental work activities on a sustained basis despite his established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364

(M.D. Fla. 2009). To assess an RFC, the ALJ must consider all relevant evidence. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010).

In the decision, the ALJ discussed Plaintiff's mental impairments. He noted that Plaintiff was treated at Peace River Center[3] briefly from February 2022 to July 2022, a clear indication that the ALJ considered these records. (Tr. 25). He summarized one such mental status examination, which had largely normal findings: "demeanor, cognition, memory, insight, judgment, thought content and thought process were all within normal limits. The undersigned does note findings of anxious mood, and restless behavior/motor." (Tr. 25). The ALJ also thoroughly summarized Dr. Otero-Suria's psychological evaluation noting largely normal findings, except for impaired recent memory and slow speech. (Tr. 25). He considered Plaintiff's alleged sleep difficulties because of PTSD, but found that the treatment records do not reflect an appearance of sleepiness, drowsiness, or impaired focus. (Tr. 23). In addition, the ALJ discussed Plaintiff's activities of daily living as reported to Dr. Otero-Suria. (Tr. 25). Plaintiff reported he could drive independently for short distances, prepare basic food without assistance, complete basic household chores that do not require bending, and manage money if needed. (Tr. 25).

---

[3] Plaintiff previously noted that he was treated at Peace River Center by a Licensed Mental Health Counselor. (Doc. 26, p. 19). Plaintiff acknowledged that a Licensed Mental Health Counselor is not an acceptable medical source under the regulations. (Doc. 26, p. 19); *see* 20 C.F.R. § 404.1502(a).

Lastly, the ALJ discussed the State agency psychological consultant's opinion. He found it unpersuasive based partially on Dr. Otero-Suria's opinion who found Plaintiff had impaired recent memory and slow speech. (Tr. 26). The ALJ then determined, "[t]he mental residual functional capacity and limitation for simple routine tasks and instructions and with reasoning level 1 or 2 is supported by the consultative examination and the treatment records from Peace River Center." (Tr. 27).

Here, the ALJ considered the entirety of Plaintiff's limitations, including his alleged mental impairments. The ALJ thoroughly considered the medical and other evidence of record that related to his alleged mental impairments. After consideration of the evidence of record, the ALJ assessed Plaintiff's RFC and limited him to light work with additional limitations and to jobs that have simple routine tasks and instruction and a reasoning level 1 or 2. (Tr. 22, 27). Substantial evidence supports the ALJ's RFC assessment.

## III.   Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on July 12, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties